[Crim. No. 599.   Fourth Dist.   Feb. 28, 1950.]

THE PEOPLE, Respondent, v. WILLIAM NOAH VAN BIBBER et al., Defendants; JOHN PAUL CRUYSEN, Appellant.

John Paul Cruysen, in pro. per., for Appellant.

Fred N. Howser, Attorney General, and Stanford D. Herlick, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Defendant William Noah Van Bibber was charged by information filed on June 24, 1948, with the crime of burglary in the first count, grand theft in the second count, and with four prior felony convictions. Defendant and appellant John Paul Cruysen was charged in a separate information filed on July 7, 1948, with the same offenses, allegedly committed on the same day, and further charged that he had previously suffered two convictions of a felony. On arraignment, while represented by the same counsel, each defendant entered a plea of not guilty to the offenses charged. Van Bibber denied, but Cruysen admitted the prior convictions. The court announced that the trial of the two defendants would be set for August 3. On motion of the district attorney the count of grand theft was dismissed as to each defendant. The reporter's transcript recites that the above-entitled actions came on regularly for trial "jointly" in said court. A jury was selected to try the defendants on the issues presented. It returned a verdict against both defendants. Through their attorney, a notice of appeal was filed and their appeal from the judgment of conviction was subsequently affirmed under section 1253 of the Penal Code. Upon sufficient showing by defendant Cruysen leave was granted to withdraw the remittitur as to him and to set aside the order of affirmance in reference to his case which is now being considered on its merits.

The first complaint is that the trial court failed to order a consolidation of the two informations for trial under section 954 of the Penal Code. Under that section and section 1098 of the Penal Code it has been held error to consolidate for trial two separate informations against different defendants. Such error is, however, one of procedure and not jurisdictional. (*People* v. *Shepherd,* 14 Cal.App.2d 513, 520 [58 P.2d 970].)

In *People* v. *Aguinaldo,* 3 Cal.App.2d 254 [39 P.2d 505], this court held likewise and sustained the judgment of conviction under section 4½ of article VI of the Constitution upon the theory that the conviction did not result in a miscarriage of justice. In *People* v. *Johns,* 69 Cal.App.2d 737 [160 P.2d 102], it was stated that an objection to the consolidation of separate informations against different defendants for the purpose of trial comes too late to be considered on appeal where the objection is first made by defendant after he has proceeded to trial and rested his case.

So far as the record here is concerned, the two defendants were to be tried on the same day, before the same jury, on

the same charge, and apparently all parties permitted this procedure. No objection or complaint was made to this method of trial. The reporter's transcript indicates that the two defendants were being "jointly" tried on the same charge. Although the record does not contain a signed order of consolidation the facts shown are tantamount to an order of consolidation. Defendant should not now be heard to complain for the first time on appeal. Since appellant was charged with the same crime, committed at the same time, and the same evidence was applicable to both defendants, and since the error committed was one of procedure and not of jurisdiction and the evidence fully justifies the conviction, it cannot be said that a miscarriage of justice resulted. Under section 4½, article VI of the Constitution the error was not prejudicial. (*People* v. *Davis,* 42 Cal.App.2d 70 [108 P.2d 85]; *People* v. *Shepherd, supra.*)

■ Appellant's next complaint involves the sufficiency of the evidence to support the verdict of guilty of burglary, as charged, and is directed mainly to the claim that there was insufficient evidence of the identification of appellant as one of the perpetrators of the crime charged.

The People's evidence discloses that about 1:45 a.m. on June 8, 1948, a drugstore in Pixley was burglarized. Rolls of pennies and other money were taken from the cash register. A small safe containing cash and checks was rolled out of the store and taken to a near-by alley. Shortly before this time, three men entered a bar near the drugstore. They approached the bartender, seated themselves in front of him and ordered drinks and change. The bartender closely observed them. Shortly thereafter they left those premises. Some time later two deputy constables, who were patrolling the alley in their car, came upon an Oldsmobile car parked across the alleyway. They testified that defendant Van Bibber was seated at the driver's seat of that car and two other men were doing something on the opposite side of it. One officer testified that he identified appellant Cruysen as one of those men; that Cruysen jumped into the back seat of the Oldsmobile and the other men jumped into the front seat; that at that time the officer's car was about 25 feet from the Oldsmobile and had its high-beam lights shining directly on the men; that defendant Van Bibber drove on and it was then that the mutilated safe was discovered in their pathway; that the officers gave chase and secured the license number of the Oldsmobile; that defendant outmaneuvered them and the

officers returned for assistance. One of these officers, accompanied by the bartender, then set out to find the men. Van Bibber was seen dodging between near-by houses. The officer gave chase on foot and shot his revolver several times in the air. While climbing over a wire fence Van Bibber fell to the ground and was apprehended. He gave a false account of his conduct, claimed that he was a hitchhiker and had just alighted from a train. He later admitted he owned the Oldsmobile but refused to talk further until he had "a mouthpiece." He was then identified by the bartender as one of the men who had visited his bar a few minutes before the burglary. The Oldsmobile was later found parked under near-by trees in a damaged condition. Two rolls of pennies, the handle of a safe, a sledge hammer, two crowbars, drills, a flashlight, and other such tools, were found in or near that car. Black gloves worn by Van Bibber were also found therein. Fishing licenses bearing the names and address of William Van Bibber and Bert E. Van Bibber, brother of defendant, were also there found.

Appellant Cruysen was later arrested in Pasadena along with Russell Van Bibber. At the preliminary hearing, the proceeding against Russell Van Bibber was dismissed, due to lack of identification.

At the trial appellant Cruysen testified that he was not in Pixley on the night in question; that "I was pretty sure I was at Third and Hill, 410 West Third Street, where I believe I was stopping . . . I am pretty positive I was there but I wouldn't get up and stake my life on it. . . ." He then testified that he knew Russell Van Bibber for a period up to seven years and knew William Van Bibber about three years and was visiting the latter's home when he was arrested. On the witness-stand he admitted being previously convicted of burglary and of possession of counterfeit coins.

William Van Bibber admitted being in the bar on the occasion mentioned but claimed he was alone at the time. He also said he was sitting in the Oldsmobile near the alley that night but insisted that no one was with him; that he saw no safe, was not chased by an officer, but parked his car near the eucalyptus trees to rest, and that in parking he damaged his car and was on foot hunting for a repairman when accosted by the officer whom he believed to be a person about to rob him; that he ran and fell over a fence about the time the officer shot and then offered the officer his pocketbook, believ-

ing that he was being robbed but discovered that it was an officer pursuing him.

The testimony of the bartender in respect to appellant's identity was quite positive. He testified that he recalled seeing both defendants on trial, at the bar that night with one other person; that they sat "right in front of where I was on the stool"; that he waited on them and gave the change to Van Bibber. He was asked how he identified Cruysen and he stated: "I just remember him by the face. At the job I have, I remember most all my customers by the face. If a stranger ever comes in I remember the face, and his face was of unusual . . . I remember him by the color of his eyes and his face . . . He has light gray eyes . . . gray hair . . . the three of them sat side by side."

The officer testified, as to his identification, that he saw appellant get into the Oldsmobile that night and he described the incident as follows: "When this man got in the car, in the rear seat, he came up facing me. Full face when he came in the car, close enough to get in the car. When he came in the car he turned around and sat down and with his left side of his face to me. I got a good look at his face. He had on a light shirt. I wouldn't say it was a white shirt. It was a light color. I got a good look at his face, the sight of his face, and the color of his hair . . . Once I get a good look at a man's face, I can always identify it again. I don't think there are two faces just like his."

Appellant is comforted by the fact that he had a scar on his face which neither witness seemed to describe and that his eyes are blue rather than gray, and claims therefore that the witnesses must have been mistaken in their identification of him, citing *People* v. *Gibbons,* 93 Cal.App.2d 28 [208 P.2d 411].

The question of the identification of appellant by these witnesses was a factual question for the jury to determine. There is sufficient competent evidence to support its conclusion that defendant was one of the participants in the burglary committed.

█ The last complaint of appellant is that since he admitted his prior convictions of felonies the prosecution had no right to have such convictions alluded to at the trial, citing sections 1025 and 1093, subdivision 1 of the Penal Code. No mention was made of appellant's prior convictions until he took the stand as a witness in his own behalf. It was proper,

on cross-examination, to show that the defendant had been twice convicted of a felony (*People* v. *Peete,* 28 Cal.2d 306, 319 [169 P.2d 924] ; Code Civ. Proc., § 2051.)

We have read the entire record and conclude that the appellant had a fair and impartial trial and that no prejudicial error resulted.

Judgment affirmed.

Barnard, J., and Mussell, J., concurred.

A petition for a rehearing was denied March 9, 1950, and appellant's petition for a hearing by the Supreme Court was denied March 27, 1950.